
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 15-46-BLG-SPW |
| Plaintiff/Respondent, | CV 17-72-BLG-SPW |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| CAROL LYNETTE PEARSON, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Pearson's motion to vacate, set aside, or correct the sentence, pursuant to 28 U.S.C. § 2255. Pearson is a federal prisoner proceeding pro se.

On December 15, 2017, the Court sought clarification from Pearson on two points relevant to her motion. She responded on January 2, 2018.

## I. Preliminary Review

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist.*

*Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J.,

concurring) (referring to Rules Governing § 2254 Cases). But "it is the duty of the

court to screen out frivolous applications and eliminate the burden that would be

placed on the respondent by ordering an unnecessary answer." Advisory

Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory

Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

A grand jury indicted Pearson on one count of conspiracy to possess five or

more grams of actual methamphetamine with intent to distribute, a violation of 21

U.S.C. §§ 846 and 841(a)(1) (Count 1); one count of possessing five or more

grams of actual methamphetamine with intent to distribute, a violation of 21

U.S.C. § 841(a)(1); and two counts of distributing a substance containing a

detectable amount of methamphetamine, violations of 21 U.S.C. § 841(a)(1)

(Counts 3 and 4). *See* Indictment (Doc. 1) at 1-3. Assistant Federal Defender

David Merchant was appointed to represent Pearson. *See* Order (Doc. 11).

If convicted on Counts 1 or 2, Pearson faced a mandatory minimum sentence

of at least five years in prison and a maximum of 40 years. *See* 21 U.S.C. §

841(b)(1)(B)(viii). If she had a "prior conviction for a felony drug offense" and

the United States complied with 21 U.S.C. § 851(a), Pearson faced a mandatory

minimum sentence of ten years and a maximum of life. *See id.* §

841(b)(1)(A)(viii); *see also* Change of Plea Tr. (Doc. 57) at 12:17-13:10.

The parties reached a plea agreement. Pearson agreed to plead guilty to Count 1, the conspiracy count, and waived her right to appeal the sentence or pursue a collateral attack except for claims of ineffective assistance. *See* Plea Agreement (Doc. 31) at 2 ¶ 2, 7 ¶ 9. The United States agreed to dismiss Counts 2 through 4, to seek a three-level downward adjustment for acceptance of responsibility, and to seek a downward variance if Pearson's guideline calculation included an enhancement for money laundering. *See id.* at 2 ¶ 2, 6 ¶ 6. Pearson pled guilty in open court on October 14, 2015. *See* Minutes (Doc. 35). She stated she did not disagree with anything the United States said it was able to prove. *See* Change of Plea Hr'g (Doc. 57) at 24:14-26:20.

The United States Probation Office drafted a presentence report. The offense conduct portion of the report recited, in essence, the United States' Offer of Proof. Officers conducted three controlled buys near a residence on South 34th Street in Billings. Pearson was believed to have provided a total of 9.5 grams of a substance containing methamphetamine. After these three purchases, officers obtained warrants for the residence Pearson appeared to be operating out of, a storage locker registered to her, and her vehicle. Excluding items found in the residence, the warrant returns from Pearson's car and storage locker included 44.29 grams of methamphetamine, 91.8 grams of cocaine, and cash. The

3

methamphetamine found in Pearson's vehicle was divided into 38 separate baggies. *See* Presentence Report ¶¶ 8-13.

Under the usual guidelines procedure where multiple drugs are involved, the draft report determined the base offense level by converting the methamphetamine and cocaine to marijuana. *See* U.S.S.G. § 2D1.1 Application Note 8(B), (D). The draft report arrived at a base offense level of 28. With a three-point reduction for acceptance of responsibility, Pearson's total offense level was 25. Although Pearson had four prior felony drug convictions, *see id.* ¶¶ 34, 36, 37, 39, she had only five criminal history points, putting her in criminal history category III, *see id.* ¶ 42. Her advisory guideline range was 70 to 87 months. *See id.* ¶ 93.

Pearson objected to the draft report's calculation of the drug quantity. *See* Fed. R. Crim. 32(f). Her counsel argued that the entire weight of the substances containing methamphetamine, rather than the weight of the actual methamphetamine, should have been converted to marijuana. *See* Presentence Report at 20. The difference is significant. The entire weight includes the weight of "cut" used to dilute the controlled substance; the weight of the actual methamphetamine excludes any cut. To account for the different purities, the conversion factor is higher for actual methamphetamine and lower for a substance containing methamphetamine. One gram of a substance containing methamphetamine is deemed equivalent to 2 kilograms of marijuana, but one gram

of actual methamphetamine is deemed equivalent to 20 kilograms of marijuana. *See* U.S.S.G. § 2D1.1 Application Note 8(D) at 160 (Nov. 1, 2015). Counsel's objection, however, failed to persuade the probation officer. She declined to revise the report.

At the sentencing hearing, counsel abandoned his previous objection. *See* Sentencing Tr. (Doc. 55) at 5:4-22. With minor corrections to the draft report's drug amounts, *see id.* at 3:16-4:21, the Court held Pearson responsible for 41.29 grams of actual methamphetamine, 3.1 grams of a substance containing methamphetamine, and 98.7 grams of cocaine. Combined, these substances were equivalent to 851.74 kilograms of marijuana, corresponding to a base offense level of 28. *See* Presentence Report ¶¶ 14, 20. The presentence report was amended after sentencing to reflect these minor corrections; the version on file is the final, corrected version.[1]

Pearson appealed. Counsel filed an *Anders* brief and moved to withdraw. *See Anders v. California*, 386 U.S. 738, 744-45 (1967). The appellate court reviewed the record and found no potential grounds for relief. Pearson's claims against her counsel were dismissed as more appropriately pursued under 28 U.S.C. § 2255. Pearson's conviction was affirmed and her sentencing appeal was

---

[1] This version is the one that is sent to the Bureau of Prisons, so it is the one that Pearson has access to.

dismissed on January 23, 2017. *See* Mem. (Doc. 60) at 1-2.

Pearson's conviction became final on April 24, 2017. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). She timely filed her § 2255 motion on May 26, 2017. *See* 28 U.S.C. § 2255(f)(1).

## III. Claims and Analysis

Pearson's claims are reorganized here, but all are addressed. She makes three claims:

A.  The search warrants for her residence, vehicle, and storage locker were fatally defective. *See* Mot. § 2255 (Doc. 64) at 6; Br. in Supp. (Doc. 65) at 6, 7; Second Br. (Doc. 67) at 6.

B.  Before she pled guilty, she was not adequately advised what conspiracy was or how her sentence would be determined. *See* Mot. § 2255 at 5, 7; Br. in Supp. at 2-5; Second Br. at 5; Third Br. (Doc. 68) at 4.

C.  Her sentence was unfairly elevated because the base offense level was determined by the weight of actual methamphetamine rather than the entire weight of the substances containing methamphetamine.[2] *See* Mot. § 2255 at 3-4, 7; Br. in Supp. at 1, 7-9; Second Br. at 2-4, 7; Third Br. at 1-6.

All of Pearson's claims allege that counsel was ineffective. Such claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Pearson must allege facts sufficient to support an inference (1) that

---

[2] Pearson explains that she is not able to present the lab reports or warrant applications because they are not in her possession. *See* Letter (Doc. 64-2) at 1. The Court takes Pearson at her word and assumes what she says about their contents is true.

counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

## A. Search Warrants

Pearson avers that the warrants authorizing search of her residence, vehicle, and storage locker were invalid. She says the warrants did not name her and, when law enforcement officers pulled over her vehicle to seize and search it, they did not even know she was the person they believed to be the owner of the car. *See, e.g.,* Mot. § 2255 (Doc. 64) at 6. She concludes the evidence obtained from executing the warrants could not be admissible against her.

The warrant requirement "protects people, not places." *See, e.g., Katz v. United States*, 389 U.S. 347, 351 (1967). But that has never meant that a search warrant is issued in a person's name. Neither the warrant nor the application is required to identify everyone (or anyone) against whom any items seized will eventually be used. The Fourth Amendment requires that a warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Warrants to search Pearson's residence, vehicle, and storage locker were not required to authorize search or seizure of Pearson herself.

Pearson's allegations do not support an inference that any warrant was

invalid or any search violated the Fourth Amendment. This claim is denied.

As to the residence alone, Pearson claims the warrant was invalid because she had not lived there for some time. This argument does not necessarily invalidate the warrant and could deprive Pearson of standing to contest it. But, giving Pearson the benefit of any doubt, her argument could make the evidence seized from the residence irrelevant to her. Even so, this eliminates only 6.9 grams of cocaine from the case and makes no difference in the outcome. *See* Presentence Report ¶ 14 at 5.

## B. Guilty Plea to Conspiracy

Pearson contends that counsel did not accurately explain to her what conspiracy is. (She also contends he did not accurately explain drug quantity, but that is addressed in the next section.) To support this claim, Pearson must allege facts sufficient to support an inference that counsel's advice was "so incorrect and so insufficient that it undermined [her] ability to make an intelligent decision" whether to plead guilty or go to trial. *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)). In other words, she must show a reasonable probability that competent counsel would have advised her to reject the Government's plea offer and go to trial instead. *See Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985).

Following Pearson's allegations, the Court will assume not only that counsel

did not accurately explain conspiracy but also that the facts of the case did not meet the elements of conspiracy. *See, e.g., United States v. Lennick*, 18 F.3d 814, 819 (9th Cir. 1994) (quoting *United States v. Lechuga*, 994 F.2d 346, 347 (7th Cir. 1993) (en banc)); 9th Cir. Crim. Jury Instr. 9.19A (2010). Under those assumptions, counsel's performance was unreasonable under the first prong of the *Strickland* test, because "mistakes of law do not qualify as reasonable strategic choices." *Brodit v. Cambra*, 350 F.3d 985, 1005 (9th Cir. 2003) (citing *Williams v. Taylor*, 529 U.S. 362, 395-96 (2000)).

But Pearson also admitted—and does not now dispute—that she personally sold methamphetamine on September 14, September 18, and September 19, 2014. She also admitted the vehicle and storage locker were hers. *See* Change of Plea Tr. (Doc. 57) at 25:15-18; Resp. to Order (Doc. 70) at 2. In the vehicle, officers found methamphetamine parceled out into 38 individual baggies. Change of Plea Tr. at 25:24-26:3. In the storage locker, they found 55.5 grams of cocaine and multiple baggies. *Id.* at 25:21-23.

Prosecutors reputedly "like" conspiracy because it means one defendant can be held criminally liable and be sentenced based on acts committed by co-conspirators, when the defendant is not even present. But this extension of liability was not an issue in Pearson's case. The facts she admitted established that she *personally* possessed more than 5 grams of pure methamphetamine with intent to

distribute it. That is what she was charged with in Count 2 of the Indictment. Thus, even assuming counsel's performance was unreasonable, Pearson's guilty plea to conspiracy did not prejudice her. It did not make her liable for more or different conduct than she was personally liable for on Count 2 of the indictment.

Further, at sentencing, Pearson was not held responsible for more drugs than she *personally* possessed with intent to distribute. Eliminating all drugs connected with the residence or with conspiracy, she was personally responsible for 39.7 grams of actual methamphetamine (794 kilograms of marijuana), plus 91.8 grams of cocaine (18.36 kilograms of marijuana), totaling more than 812 kilograms of marijuana, for a base offense level that remains at 28. *See* U.S.S.G. § 2D1.1(c)(6); Presentence Report ¶ 20. Her sentence did not depend in any degree on what anyone else possessed or did. Thus, pleading guilty to conspiracy did not cause her prejudice at sentencing either.

In sum, even assuming Pearson was ill-advised about conspiracy and actually innocent of Count 1, she was guilty of Count 2. Under the facts of the case, her guilty plea to Count 1 did not expose her to any consequence to which Count 2 did not also expose her. The facts she admitted at the plea colloquy proved the elements of Count 2 as well as the relevant drug quantity of more than five grams of actual methamphetamine. Her sentence on Count 2 would not have involved fewer or additional or different facts than the sentence imposed on Count

10

1. There is no reasonable probability—there is no realistic prospect at all—that she would have gone to trial or received a lesser sentence had counsel adequately advised her of the nature of conspiracy. Competent counsel would have urged Pearson to plead guilty to Count 2 instead, and she would be in the same position today.[3]

## C. Drug Quantity

### 1. Use of Actual Methamphetamine Versus Total Substance

Pearson's most pressing concern is the way her base offense level was calculated. Pearson says counsel did not explain that her base offense level would be set by *either* the weight of the actual methamphetamine *or* the total weight of the substances containing methamphetamine. Again, the Court takes her at her word and assumes she did not know that when she pled guilty.

The base offense level is determined by the guidelines, not by choice of the probation officer, the government, or defense counsel. The guidelines provide:

The terms "PCP (actual)," "Amphetamine (actual)," and "Methamphetamine (actual)" refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50% purity contains 5 grams of PCP (actual). In the case of a mixture or substance

---

[3] It is possible the United States could have filed an Information under 21 U.S.C. § 851(a) alleging four prior convictions for felony drug offenses. *See* Presentence Report ¶¶ 34, 36, 37, 39. If only two of those convictions were counted against her under 21 U.S.C. § 841(b)(1)(A), Pearson faced a mandatory sentence of life in prison; if only one counted, she faced a mandatory sentence of 20 years. To the extent Pearson's guilty plea had the effect of avoiding one or more § 851 enhancements, it is even less likely she would have risked conviction at trial.

11

containing PCP, amphetamine, or methamphetamine, use the offense
level determined by the entire weight of the mixture or substance, or
the offense level determined by the weight of the PCP (actual),
amphetamine (actual), or methamphetamine (actual), *whichever is
greater*.

U.S.S.G. § 2D1.1(c) Note B (emphasis added); *see also Stinson v. United States*,
508 U.S. 36, 38 (1993). This note may apply in any drug case. It is unreasonable
for a lawyer to fail to anticipate its application.

But, again, the second prong of the *Strickland* test is the sticking point. Note
B existed whether counsel told Pearson about it or not. It would have applied
regardless of whether Pearson pled guilty or went to trial. In fact, if convicted on
Count 1 or Count 2 at trial, the drug weight still would have been based on actual
methamphetamine, but Pearson would have lost the three-level downward
adjustment for acceptance of responsibility. Pearson's advisory guideline range
would not have been 46 to 57 months, as counsel led her to expect, or even 70 to
87 months, as it actually was. It would have been 97 to 121 months.[4]

In another case, a defendant might have reason to stand trial rather than
pleading guilty if she knew the likely advisory guideline range would be 70 to 87
months rather than, as Pearson was told, 46 to 57 months. *See* Br. in Supp. (Doc.
65) at 4. But, under Note B, Pearson simply did not have a legal argument to

---

[4] *See also* note 3, *supra*.

12

support a range of 46 to 57 months. It was never an option. Further, as explained above, even if Pearson had been acquitted on Count 1 at trial, there was no reasonable prospect of acquittal on Count 2. A person with a realistic prospect of acquittal could reasonably choose trial, *see, e.g., Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986), but Pearson was not in that position.

Counsel's assumption, as described by Pearson, was unreasonable and unfortunate. As she says, if counsel told her the total weight of the substance would definitely be used in determining her sentence, "what . . . took place was not right." Resp. to Order at 8. Pearson should have been warned, not surprised. But the error was not prejudicial under *Strickland*. No other method of determining the base offense level was available, and Pearson's conviction was practically certain. Her drug trafficking had put her in a worse position than counsel evidently realized, but that does not mean any lawyer could have obtained a better outcome.

Citing *United States v. Lee*, 725 F.3d 1159 (9th Cir. 2013), *see* Br. in Supp. at 3 ("Lee v. Guam"), Pearson contends that she did not understand at the plea colloquy that she was admitting a quantity of pure methamphetamine rather than a substance containing methamphetamine. But she did. She was charged with "five grams or more of actual (pure) methamphetamine," and that is what she admitted at the change of plea hearing. As Pearson clarified in her response to the Court's Order, she was not aware of any way she could avoid responsibility for the

13

methamphetamine in her vehicle.  *See* Resp. to Order (Doc. 70) at 2.  Her current

allegation that she signed the plea agreement "under the impression from . . .

counsel the calculations would be by the weight not the actual amount," Mot. §

2255 at 5, only reinforces her understanding when she signed the agreement that

there was a difference between the weight of the entire substance and the amount

of pure methamphetamine.  In *Lee*, the defendant admitted to transporting more

than 3 kilograms of "ice," but she thought "ice" meant a substance containing

methamphetamine, not actual methamphetamine.  *See id.* at 1162, 1166-67.

Pearson's case is not like Lee's.

### 2. Laboratory Evaluation of Purity and Weight

Pearson also contends that counsel should have had the drug purity retested

because the controlled purchases did not contain five or more grams of actual

methamphetamine.  *See, e.g.*, Mot. § 2255 at 7; Br. in Supp. at 2-3.  But they were

not required to.  Pearson admitted that "the methamphetamine that was either

purchased from [her] or found pursuant to these search warrants, amounted to at

least five grams of actual or pure methamphetamine."  Change of Plea Tr. (Doc.

57) at 27:14-18.  A plea to five or more grams set the minimum sentence at five

years and the maximum at 40 years.  *See* 21 U.S.C. § 841(b)(1)(B).  That was

sufficient to satisfy the Sixth Amendment.  *See Alleyne v. United States*, 570 U.S.

99, ___, 133 S. Ct. 2151, 2155 (2013).  The law required that her sentence be

14

between five and 40 years, and it was.

Pearson points out that "some of the drugs" were still in "the packages" in which they were sent to the lab. Mot. § 2255 at 7. Possibly this refers to drugs that were "field-tested." *See* Presentence Report ¶ 14 at 5 (describing one meth purchase and three quantities of cocaine). At any rate, Pearson was asked to clarify whether she had reason to believe the total amount of methamphetamine in the vehicle plus the controlled purchases was less than 41.29 grams of pure methamphetamine. *See* Order (Doc. 69) at 1. Her response indicates a persistent misunderstanding that the weight of actual methamphetamine could be used only if the substance containing methamphetamine is at least 50% pure. *See, e.g.*, Mot. § 2255 at 7, 8; Resp. to Order (Doc. 70) at 4-6, 8. That is not what Note B says. The 50% figure is merely an example.

Finally, Pearson also contends that the figure of 58.7 grams of a substance containing methamphetamine includes the weight of the baggies. It did, but that figure was not used in determining her sentence. *See* Presentence Report ¶ 14. The remainder of Pearson's response does not suggest she has a reason to believe the lab wrongly calculated the weight of actual methamphetamine. This portion of Pearson's claim is speculative and does not meet either prong of the *Strickland* test.

## IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Pearson's claims do not meet the relatively low threshold required for a COA. Assuming her allegations are true, she certainly shows that counsel's performance was unreasonable. But the facts of the case flatly negate prejudice. Her legal objections to the warrants have no support in the law; warrants have never been required to specify against whom their fruits will be used, and excluding all the evidence obtained from the residence does not change anything about the case. Even assuming Pearson was actually innocent of conspiracy, her admissions at the change of plea hearing demonstrated that she was guilty of Count 2, and she has adduced no reason to believe she was responsible for less than five grams of pure methamphetamine. Even if counsel failed to realize that her base

16

offense level at sentencing would be predicated on the amount of actual methamphetamine (and cocaine and a small amount of a substance containing methamphetamine, all converted to marijuana), her misunderstanding does not support an inference either that she could have received a lesser sentence or that she might have gone to trial rather than pleading guilty.

In sum, although Pearson should not have been surprised at sentencing that her base offense level depended on pure methamphetamine, she was going to receive that news sooner or later. Counsel's failure to adequately prepare her, though unreasonable, did not cause prejudice under *Strickland*. Pearson does not make a showing of any substance that she was denied a constitutional right. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Pearson's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 64, 65, 67, 68, 70) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Pearson files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 17-72-BLG-SPW are terminated and shall close the civil file by entering

judgment in favor of the United States and against Pearson.

DATED this 22nd day of January, 2018.

Susan P. Watters
United States District Court